**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-01998-NYW

JEFF COLDWELL, and
ISAAC MERTENS,
Individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

RITECORP ENVIRONMENTAL PROPERTY SOLUTIONS,
a Colorado corporation, formerly d/b/a PESTRITE,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER ON
DEFENDANT RITECORP'S MOTION FOR SUMMARY JUDGMENT**

---

Magistrate Judge Nina Y. Wang

      This civil action comes before the court on Defendant Burns Family Investments & Holdings's ("RITECorp")[1] Motion for Summary Judgment ("Motion for Summary Judgment") filed June 14, 2018 [#87]. The Motion for Summary Judgment is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated September 16, 2016 [#15]. In the Motion for Summary Judgment, RITECorp claims that summary judgment on all of Plaintiffs'[2] claims under the Fair Labor Standards Act ("FLSA") and Colorado Wage Claim

---

[1] The entity known as "RITECorp Environmental Property Solutions" has dissolved and the defendant is now Burns Family Investments & Holdings, but for consistency and ease-of-reading, the court follows the parties' practice of referring to this party as RITECorp.

[2] There are eleven total plaintiffs in this case: two Named Plaintiffs (Mr. Coldwell and Mr. Mertens) and nine Opt-In Plaintiffs. The former is collectively referred to as "Named Plaintiffs,"

Act ("CWCA") is appropriate because the former is barred by the statute of limitations and the latter does not create a cause of action for the type of relief Plaintiffs seek.[3]

Plaintiffs Jeff Coldwell and Isaac Mertens (individually, "Mr. Coldwell" and "Mr. Mertens"; collectively, "Named Plaintiffs") filed a Response on July 16, 2018 [#94] to which RITECorp replied on July 30, 2018 [#96]. The matter is now fully briefed and ripe for disposition, and this court finds that oral argument would not materially assist in its resolution. For the reasons set forth in this Order, the Motion for Summary Judgment [#87] is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND[4]

Plaintiffs are former employees of RITECorp, a now-defunct pest control and extermination company, who routinely worked in excess of forty hours per week but were nevertheless paid on a salaried basis. When RITECorp hired the Plaintiffs in this case, it classified those employees as "exempt employees." [#87 at 1–4; #94 at 4–5]. An "exempt employee" is any employee who is not subject to overtime requirements under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 213(a); 29 C.F.R. § 541.0(a). Thus, despite working overtime—in excess

---

the later collectively referred to as "Opt-In Plaintiffs" and together are collectively referred to as "Plaintiffs." Specific individuals are identified by name when appropriate.

[3] RITECorp also argues about the proper calculation for damages [#87 at 11–15] but because such calculations are not appropriate given the relief provided by this Order and the disputed facts underlying those calculations, the court does not address those arguments in this Order.

[4] RITECorp disputes some of these facts but accepts them as true for purposes of the summary judgment motion. [#87 at 2 n.1].

of forty hours per week—the Plaintiffs were not paid for that work due to their exempt classification. This arrangement continued for several years.

RITECorp classified the Plaintiffs as exempt based on extensive discussions with ESG Achievement, Inc. ("ESG"), a Professional Employer Organization governed by the Colorado Employment Security Act, C.R.S. § 8-70-101 *et seq.* ESG and RITECorp referred to the former's role as that of an "administrative employer," handing payroll, employee benefits, workers compensation, tax withholding, and other such personnel matters. When personnel were hired at RITECorp, they were presented with an "employee acknowledgement" form that referred to the employees as "co-employee[s]" of RITECorp and ESG. [#33 at 7; #33-2].

RITECorp and ESG spent several years discussing the issue of employee classification as "exempt" or "non-exempt." *See* [#55-8 at 16] (June 16, 2009 email from ESG employee Jessica Hergenreter to RITECorp General Manager Michael Burns regarding exempt classification); [*Id.* at 12] (August 1, 2012 email from RITECorp employee Rae Wree asking "to clarify the rules" on employee compensation); [#94-5 at 56–60] (Deposition testimony of Michael Burns). Over the course of these years-long discussions, RITECorp received advice from ESG that its employees were improperly classified as exempt. *See* [#94-6 at 4] (November 14, 2014 email from ESG employee Loraine Stokes to RITECorp employee Cindy Gilland expressing concern that a Department of Labor audit would find that RITECorp's exempt classification constituted a willful violation of the FLSA); [#94-6 at 2] (August 15, 2012 email from Meribeth Lunn, Vice President of ESG, to Michael Burns stating "your employees should be classified as non-exempt and therefore should be paid overtime"); [#55-8 at 3–4] (January 5, 2010 email from Ms. Hergenreter to Michael Burns stating that her recommendation was to pay overtime); [#55-8 at 15] (June 5,

2009 email from Ms. Hergenreter to Rae Wree stating that "[a]t first glance, I believe your staff does not qualify to be exempt").

Nevertheless, RITECorp also received advice that its employees' classification was uncertain, and that they were not unambiguously violating the FLSA. *See* [#55-8 at 16] (June 16, 2009 email from Ms. Hergenreter to Michael Burns stating that application of the exempt classification was unclear and depended on precise job description); [#87-1 at 3] (Michael Burns's declaration in support of summary judgment stating that RITECorp relied on ESG for exempt classification and acted based on its best understanding of the applicable law). In early 2015, two former RITECorp employees sued RITECorp for unpaid overtime ("the 2015 lawsuit"). [#87-1]. RITECorp then consulted with counsel and determined that its employees should be classified as non-exempt and paid overtime, and quickly changed its compensation structure to reflect this. [#87-1 at 3–4]. The final exempt paychecks were issued in April 2015.

The Named Plaintiffs initiated the present action on August 5, 2016, by filing a Complaint asserting a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for unpaid overtime wages on behalf of themselves and all others similarly situated. [#1]. Plaintiffs also asserted a claim under the Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.* ("CWCA"). [*Id.*]. On July 20, 2017, the court granted in part and denied in part the Named Plaintiffs' Motion for Conditional Certification as a Collective Action [#59], allowing Notice to

be sent to putative opt-in members.  On June 14, 2018, Defendant moved for summary judgment.

Plaintiffs Responded on July 16, 2018 [#94] and Plaintiffs filed their Reply on July 30 [#96].

## LEGAL STANDARDS

### I.    Summary Judgment

A party is entitled to summary judgment if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "At the summary judgment

stage the judge's function is not himself to weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249 (1986); *see also Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972

(10th Cir. 2018) ("Summary judgment is inappropriate where there is a genuine dispute over a

material fact, that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party. (citation and quotation marks omitted)).  There is no issue for trial unless there

is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.

*Anderson*, 477 U.S. at 249.  If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted.  *Id.*  Summary judgment is "generally inappropriate when

mental state is an issue, unless no reasonable inference supports the adverse party's claim." *Sec.*

*& Exch. Comm'n v. Johnston*, 972 F.2d 357 (Table) (10th Cir. 1992).

The non-moving party must offer evidence in opposition to the motion that is admissible,

but the non-moving party does not have to produce that evidence in an admissible format. *See*

Fed. R. Civ. P. 56(c)(4) (An affidavit or declaration used to support or oppose a motion must . . .

set out facts that would be admissible in evidence[.]"); *Celotex*, 477 U.S. at 324 ("We do not mean

that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995) ("To be sure, the nonmoving party need not produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible." (cleaned up)). For example, affidavits submitted in opposition to summary judgment are typically inadmissible at trial as hearsay, but may be considered at the summary judgment stage on the theory that the underlying evidence may ultimately be presented at trial in an admissible form. *See Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016); *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). The court therefore does not need to conduct a prior evidentiary hearing or resolve a motion in limine before weighing evidence proffered at the summary judgment stage. *See O'Connor v. Williams*, 640 F. App'x 747, 750 (10th Cir. 2016) (holding that the district court did not err in considering prior testimony because "even assuming the transcript of [defendant's] prior testimony would be inadmissible in its current form, [defendant] hasn't alleged the substance of the transcript wouldn't be admissible in some other form—e.g., in the form of [his] live testimony.").

## II.    FLSA

### A.    Claim Accrual and Commencement of Action

A claim for unpaid overtime under the FLSA "accrues each time the employer issues a paycheck in violation of the FLSA." *Topp v. Lone Tree Athletic Club, Inc.*, No. 13-CV-01645-WYD-KLM, 2014 WL 3509201, at *8 (D. Colo. 2014) (citing *Nealon v. Stone*, 958 F.2d 584, 591 (4th Cir. 1992)). Absent unusual circumstances, the usual rules governing claim accrual and the applicable statute of limitations apply to a collective action as other non-collective civil actions.

*Sardina v. Twin Arches P'ship, Ltd.*, No. 15-CV-00054-REB-KLM, 2016 WL 10828741, at *1 (D. Colo. 2016).

Collective actions brought under the FLSA are "opt in." That is, a plaintiff is not joined in the action and will not be bound by the resolution of the action unless he files a written consent to participate in the action. *See In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 638 F. Supp. 2d 1290, 1297–98 (D. Colo. 2009). A collective action is commenced as to an individual claimant "on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought." 29 U.S.C. § 256(a). Or, if the claimant is a later, opt-in party, when she files written consent to join the action. *Id.* at § 256(b).

The requirement to file a separate written consent under § 256 applies to all plaintiffs, including those specifically named as plaintiffs in the original complaint. *Acosta v. Tyson Foods, Inc.*, 800 F.3d 468, 472 (8th Cir. 2015) (holding that plaintiff Acosta was required to file separate written consent when complaint was styled as collective action despite being the party to have filed the complaint in the first instance); *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 675 (6th Cir. 2012) ("[C]ourts construe [§ 256(a)] to do what it says: require a named plaintiff in a collective action to file a written consent to join the collective action."); *Harkins v. Riverboat Svcs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) ("The statute is unambiguous: if you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party. It makes no difference that you are named in the complaint . . . ."). This is the only understanding of § 256(a) that gives effect to its plain language, which is phrased in the conjunctive: an action is considered commenced "if [claimant] is specifically named as a party

plaintiff in the complaint <u>and</u> his written consent . . . is filed on such date." 29 U.S.C. § 256(a) (emphasis added).

The apparently-superfluous nature of the § 256(a) requirement has not gone unnoted, courts have referred to it as "curious," "redundant," and "unusual." *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 52 (W.D.N.Y. 2009) ("Although it may seem curious that this consent requirement would apply to a named plaintiff, this requirement has been held to apply even to the Named Plaintiffs in a collective action under the FLSA. (citing *Harkins*, 385 F.3d at 1101)); *Faust v. Comcast Cable Commc'ns Mgmt., LLC*, No. WMN-10-2336, 2013 WL 5587291, at *3 (D. Md. 2013) ("Although the filing of a separate written consent by a plaintiff named in a complaint may be redundant, it is nevertheless required by the plain, unambiguous meaning of the statutory text."); *Salazar v. Brown*, No. G87-961, 1996 WL 302673, at *11 (W.D. Mich. 1996) ("The statutory requirement that Named Plaintiffs file consents is unusual.") The requirement to file a written consent is clear, but the particular requirements as to the form and contents of the written consent is not. But it is at least clear that the complaint itself cannot meet the written consent requirement. *See Harkins*, 385 F.3d at 1101; *Gomez v. Tyson Foods, Inc.*, 799 F.3d 1192, 1194 (8th Cir. 2015); *Contrera v. Langer*, 290 F. Supp. 3d 269, 279 (S.D.N.Y. 2018). Given that the statute references the complaint <u>and</u> the written consent as two different entities, the two must be distinct. *Salazar*, 1996 WL 302673, at *10 ("Section 256 is expressly conjunctive."). To read the statute otherwise would render part of the statute meaningless.

Courts have generally taken a lenient approach in deciding what sort of written notice is sufficient. *See, e.g.*, *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 282 (E.D.N.Y. 2013) (holding that a written declaration made during discovery in which plaintiff

obliquely referred to himself as a plaintiff in the action was sufficient); *D'Antuono v. C & G of Groton, Inc.*, No. 3:11-CV-33-MRK, 2012 WL 1188197, at *3 (D. Conn. 2012) (holding that an affidavit attached to the response to the motion to dismiss wherein Plaintiff referred to "this litigation" met the requirement); *Contrera*, 290 F. Supp. 3d at 277 (holding that requirement was met by plaintiff's filing affidavit to motion to conditionally approve case as FLSA collective action in which plaintiff stated he was a plaintiff in the action); *Manning v. Gold Belt Falcon, LLC*, 817 F. Supp. 2d 451, 454 (D.N.J. 2011) (same). So long as there is a signed, written document from a plaintiff that manifests his consent to suit and puts the defense on notice of who is a plaintiff in the action, most courts have held that sufficient "written consent."

### B.     FLSA-Statute of Limitations

The FLSA imposes a two-year statute of limitations unless the defendant's conduct is willful in which case a three-year period applies. 29 U.S.C. § 255(a); *Mumby v. Pure Energy Svcs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011). Proving willful conduct under the FSLA requires proving either actual knowledge and willful disregard for that knowledge in committing a violation, or proving that the defendant showed "reckless disregard" for compliance with the requirements of the FLSA. *Mumby*, 636 F.3d at 1270; *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988) ("The word 'willful' is . . . generally understood to refer to conduct that is not merely negligent . . . . that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ."); *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1256–58 (10th Cir. 2017). Similarly, federal regulations define a "willful violation" as "a violation in circumstances where the agency knew that its conduct was prohibited by the Act or showed reckless disregard of the requirements of the Act." 5 C.F.R. § 551.104 (2018). Reckless

disregard is defined as "failure to make adequate inquiry into whether conduct is in compliance with the Act." *Id.*

Courts have found that a violation was willful when defendants claimed partial but imperfect knowledge of their obligations and did not pursue the matter with due diligence. *E.g.*, Mumby, 636 F.3d at 1270–72 (finding conduct was willful when employer was put on notice by counsel that its conduct violated FLSA but did not follow up or adjust its practices); *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1993) (holding that district court's finding of willfulness was not clearly erroneous when defendant knew of FLSA violations from audit and prior litigation); *Davis v. City of Reading*, No. 13-2499-CM, 2014 WL 4261281, at *3 (D. Kan. 2014) (holding that willfulness was a jury question because the City knew that there were FLSA compliance issues and did not investigate).

A finding of willfulness requires greater culpability than mere negligence or inattentiveness. *McLaughlin*, 486 U.S. at 135 (rejecting a proposed standard that would "permit a finding of willfulness to be based on nothing more than negligence"); *Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 1305, 1308 (N.D. Okla. 1998) ("Negligence or an incorrect assumption that a pay plan complies with the FLSA do not meet the criteria for a willful violation of the FLSA."); *see also Bayles v. Am. Medical Response of Colo., Inc.*, 937 F. Supp. 1477, 1489 (D. Colo. 1996) (finding no willfulness where employer merely chose most advantageous course of action when faced with "conflicting" authority regarding whether exemption applied to ambulance services). *But see Flores v. City of San Gabriel*, 824 F.3d 890, 906–07 (9th Cir. 2016) (reversing district court's finding of no willful conduct when the state of the law was unsettled in the Circuit but the City put on no evidence it ever investigated the state of the law, the ambiguity of which would not

be dispositive of willfulness in any event). But courts have generally not found that an employer's conduct was willful when the governing law was unsettled and application of the FLSA was unclear. *See, e.g.*, *Bayles*, 937 F. Supp. at 1489.

## III.    Colorado Wage Claim Act

The Colorado Wage Claim Act ("CWCA") is a statute designed to ensure that "employers to pay wages earned by their employees in a timely manner." *Lambin v. Dist. Court in and for the 18th Judicial Dist.*, 903 P.2d 1126, 1129 (Colo. 1995). Relevant here, CWCA provides a definition for "wages" under the statute:

> All amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same or whether the labor or service is performed under contract, subcontract, partnership, subpartnership, station plan, or other agreement for the performance of labor or service if the labor or service to be paid for is performed personally by the person demanding payment. <u>No amount is considered to be wages or compensation until such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee pursuant to this article.</u>

C.R.S. § 8-4-101(14)(a)(I) (2018) (emphasis added).

CWCA "does not itself create any substantive right to compensation for labor and services performed. Rather, it establishes minimal requirements concerning when and how agreed compensation must be paid and provides remedies and penalties for an employer's noncompliance with those requirements." *Barnes v. Van Schaack Mortg.*, 787 P.2d 207, 210 (Colo. App. 1990). Courts have held that for wages to be "earned" or "vested" under CWCA, they must be earned under the applicable employee agreement. *See id.* at 209 (CWCA applies "only to compensation that has been earned under the employment agreement."); *Gomez v. Children's Hosp. Colo.*, No.

11

18-CV-00002-MEH, 2018 WL 3303306, at *6 (D. Colo. 2018) ("Benefits are earned, vested, and determinable when an employee has an enforceable right to receive payment for such benefits pursuant to an employment agreement."); *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 422 (Colo. App. 2003) ("For purposes of the CWCA, compensation is earned if it is vested pursuant to an employment agreement at the time of an employee's termination." (citations and quotation marks omitted)).  But earned under the employee agreement is not limited to compensation "explicitly authorized by the agreement," as the Colorado Supreme Court's recent decision in *Hernandez v. Ray Domenico Farms, Inc.*, 414 P.3d 700 (Colo. 2018), illustrates.

In *Hernandez*, Plaintiffs were agricultural workers who sought unpaid overtime under FLSA and CWCA. *Id.* at 701.  Plaintiffs were terminated from their employment shortly after they wrote to their employer alleging entitlement to overtime compensation. *Id.*  Plaintiffs filed suit pursuant to section 8-4-109, which governs terminated workers' entitlement to final paychecks. In particular, section 109(1)(a) states that "When an interruption in the employer–employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately."  The Colorado Supreme Court held that the "only limitation the General Assembly placed on the types of wages or compensation to be received at termination was that they must be 'earned, vested, determinable, and unpaid.'"  *Id.* at 703 (quoting C.R.S. § 8-4-101(14)(a)(I)). Therefore, the Court held "that terminated employees may seek previously unpaid wages or compensation at separation under section 109." *Id.* at 704.

Like the FLSA, claims under CWCA are generally subject to a two-year statute of limitations unless the conduct was willful in which case a three-year statute of limitations applies.

C.R.S. § 8-4-122. A claim under CWCA accrues when the money becomes due but remains unpaid, i.e., the same time the FLSA action accrues. *Hernandez*, 414 P.3d at 704.

CWCA provides for statutory penalties when an employee is denied prompt payment of wages due at termination. C.R.S. § 8-4-109. However, for a plaintiff to be entitled to CWCA statutory penalties, she must first send a written demand for payment. *Id.* at § 8-4-109(3)(a); *Giuffre v. Marys Lake Lodge, LLC*, No. 11-CV-00028-PAB-KLM, 2013 WL 673987, at *5 (D. Colo. 2013). If a plaintiff fails to make such a written demand, then she is not entitled to recover penalties under CWCA, but any substantive CWCA claim remains. *Giuffre*, 2013 WL 673987, at *5.

## ANALYSIS

### I. All Plaintiffs Except Shan Curry Commenced Claims that Accrued More than Two Years but Less than Three Years Prior to the Commencement of this Action

Determining when the Plaintiffs' claims accrued for statute of limitations purposes requires this court to determine when the latest exempt paycheck was issued to each of the Named and Opt-In Plaintiffs. For most parties and Mr. Coldwell, the final paycheck that violated the FLSA was issued in April 2015. [#87 at 4; #94 at 5]. Specifically, the final paychecks for plaintiffs Jeff Coldwell, John Denny, Tom Johnson, Brian Aguilar, Tyler Petz, Travis Britton, and Bryce Edwards were issued April 4, 2015. [*Id.*]. Plaintiff Isaac Mertens separated employment earlier, and his final paycheck was issued January 30, 2015. [#87-11].[5] Shan Curry also separated

---

[5] Plaintiffs dispute this in a summary fashion, merely stating "disputed" in their Response. [#94 at 5 ¶ 17]. But there is no genuine issue as to this fact as the Defendant has provided the final, dated paycheck and Plaintiffs' denial is unsupported by any admissible evidence. Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [her] case or a

employment with RITECorp before it changed its policy, and the date of his final exempt paycheck was August 13, 2014. Finally, Chris Petz and Allen Stelwagon were promoted to managerial roles and received their last exempt paychecks on March 27, 2015 (Stelwagon) and June 5, 2015 (Petz).

Defendants argue that the Named Plaintiffs in this case—Jeff Coldwell and Isaac Mertens—did not file a written consent as required by 29 U.S.C. § 256, and therefore the claims must be dismissed as to them because, even under the three-years statute of limitations, their claims are time-barred as of April 4, 2018 (Coldwell) and January 30, 2018 (Mertens). [#87 at 6–8]. Additionally, because the Named Plaintiffs never "commenced" the action in light of their failure to file written consents, the Opt-In Plaintiffs cannot have commenced their action either because there was no predicate commenced-action to opt into. [*Id.*]. Plaintiffs contend the FLSA claims are not time-barred because willfulness is a jury question and extends the applicable statute of limitations to three, not two, years. [#94 at 8–10]. Plaintiffs did not respond to Defendant's argument that the Named Plaintiffs failed to file a written consent as required by § 256, and therefore the claims of the Named Plaintiffs and the opt-in members were untimely. *See generally* [#94; #96 at 5–6].

Even when a party fails to respond to a motion for summary judgment, the court must still consider whether the moving party has met its "initial responsibility" of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law. *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002). Here, the issue does not arise out of a material dispute over the facts, such that Plaintiffs should have come forward with evidence to

---

denial of an opponent's allegation," or it will be disregarded. *See* 10B Charles Alan Wright, et al., *Federal Practice and Procedure* § 2738 at 356 (3d ed.1998).

establish that there is a genuine issue of material fact. Rather, the question before the court is whether what the Named Plaintiffs did was adequate notice under the FLSA as a matter of law. Accordingly, even in the absence of response by Plaintiffs (which this court does not condone), the court cannot find that Defendant is entitled to judgment as a matter of law.

While it is true that the Named Plaintiffs never filed any document specifically identified as a "written consent" under § 256, they did file written statements that identified themselves as plaintiffs in this action. On May 12, 2017, the Named Plaintiffs filed Plaintiffs' Motion for Conditional Certification as a Collective Action [#49]. Exhibit B to this Motion was an affidavit signed by Isaac Mertens in which he identified himself as a plaintiff in this case [#49-2 at 1]. Jeff Coldwell's affidavit was filed as Exhibit C which contains an identical attestation [#49-3 at 1]. This is identical to what happened in *Contrera* and *Gold Belt*, where a plaintiff's affidavit attached to a motion to certify the collective action was held to be sufficient written consent under § 256. *Contrera*, 290 F. Supp. 3d at 279; *Gold Belt*, 817 F. Supp. 2d at 454. The purpose of the written consent requirement is to ensure that plaintiffs intend to be joined in the matter and defendants have full awareness of the case and plaintiffs. That purpose was met with those affidavits, and thus the action was commenced for Mr. Coldwell and Mr. Mertens on May 12, 2017.[6] This is approximately two years and four months after Mertens's final paycheck, and two years and one month after Coldwell's. Therefore, the Named Plaintiffs' cause of action is time-barred per the

---

[6] Mr. Coldwell and Mr. Mertens signed their affidavits the day before, May 11, but the time of filing with the court controls. 29 U.S.C. § 256(a).

generally applicable two-year statute of limitations but is within the three-year statute of limitations for willful conduct.

The vast majority of the Opt-In Plaintiffs' claims are similarly situated. Given the court's ruling on the sufficiency of the Notice by the Named Plaintiffs, the court simply looks to the Opt-In Plaintiffs' written consents. For all Opt-In Plaintiffs except Shan Curry, the final exempt paychecks were issued between January 1, 2015 and April 4, 2015. Except for Mr. Curry, all Opt-In Plaintiffs filed their consent to join between September 2017 [#63] and October 2017 [#76]. All Opt-In Plaintiffs except Mr. Curry thus commenced their action between two and three years since the latest accrual of their claims.

The lone exception is Shan Curry. Mr. Curry received his final paycheck under the exempt pay structure on August 13, 2014. [#87-12]. Mr. Curry filed his written consent on October 11, 2017 [#69], over three years since his claim accrued. While Plaintiffs dispute this in their Response, they do not make any argument or offer any contrary evidence. [#94]. Instead Plaintiffs merely state "disputed" in response to Defendant's assertion and supporting evidence. [*Id.* at 5 ¶ 17]. This showing is insufficient to create a genuine issue of fact as to the date Mr. Curry's claim accrued based on his final exempt paycheck, and neither is there a genuine dispute over when Mr. Curry attempted to opt into this action. [#69]. Because these two undisputed dates are outside even the three-year statute of limitations for willful conduct, Mr. Curry's claim is time-barred.

In sum, ten of the eleven total plaintiffs commenced their action under § 256 between two and three years after accrual of their claim. Given that this court finds, *infra* Section II that the Defendant's willfulness presents a jury question, those ten plaintiffs' claims are not subject to

dismissal at this stage. But one plaintiff is outside this timeframe and therefore Defendant is entitled to summary judgment as to his claims.

## II. There is a Genuine Issue of Material Fact as to Whether Defendant's Conduct was Willful

RITECorp argues that summary judgment is appropriate because Plaintiffs have failed to allege sufficient facts to create a genuine dispute as to its willfulness in classifying RITECorp employees as exempt and therefore the usual two-year statute of limitations applies and bars their claims as discussed above. At the conditional certification phase, this court declined to limit the Notice to a two-year statute of limitations period based on Defendant's argument that the Named Plaintiffs had failed to sufficiently establish willfulness. [#59 at 17–20]. Based on the record before it, the court is not persuaded that Defendant has met its burden of establishing that there is insufficient evidence of willfulness such that summary judgment is warranted.

### A. Prior Deposition Testimony

As an initial matter, the court rejects Defendant's contention that the deposition testimony of Dan Bolens and Mike Burns, attached to Plaintiffs' Response as Exhibits D and E [#94-4; #94-5], are not properly considered in making this determination [#96 at 10 n.9]. Rule 32(a)(8) contemplates that a deposition lawfully taken in a prior federal court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. Fed. R. Civ. P. 32(a)(8). First, it is not clear that the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") would read Rule 32(a)(8) to apply to the use of deposition testimony for the purpose of summary judgment rather than trial. *Tingey v. Radionics*, 193 F. App'x 747, 765 (10th Cir. 2006) ("While a few courts have applied Rule 32(a) to deposition testimony introduced in summary judgment

proceedings, in our view this application represents an overly-expansive view of the Rule, given the purpose of the rule and the mechanics of summary judgment procedure." (internal citations omitted)).

Second, the court finds that the deposition testimony meets the requirements of Rule 32(a)(8). The deposition testimony was taken in a prior case, and both Mr. Bolen and Mr. Burns were designated as Defendant's corporate designees under Rule 30(b)(6) of the Federal Rules of Civil Procedure. In addition, both Mr. Bolen and Mr. Burns were represented by counsel. Based on the record before it, the court finds that the prior case involved substantially similar allegations. Indeed, Defendant describes the prior action as one for unpaid overtime, as does Mr. Bolen in his Declaration in this case. [#87 at 4 ¶ 13; #87-1 at 3 ¶ 12]. And while the plaintiffs in the prior action are not the same Plaintiffs as in this one, courts have found that such distinction does not preclude use. *Clay v. Buzas*, 208 F.R.D. 636, 637 (D. Utah 2002); *Runge v. Stanley Fastening Sys., L.P.*, No. 4:09-CV-00130-TWP, 2011 WL 6755161, at *3 (S.D. Ind. 2011) ("The general rule is that 'depositions taken in a prior action are admissible in a subsequent action if there is substantial identity of issues and parties in the two actions.' 10A Fed. Proc., L.Ed. § 26:521. Significantly, 'total identity of parties ... is not required,' *id.*, and the "same party" rule has 'been construed liberally in light of the twin goals of fairness and efficiency.'"). Rule 32(a)(3) allows a deposition of a Rule 30(b)(6) designee to be used for any purpose. Fed. R. Civ. P. 32(a)(3); *Clay*, 208 F.R.D. at 638.

Third, even if it were fairly debatable under Fed. R. Civ. P. 32(a)(8) and Fed. R. Evid. 804 that the deposition testimony was admissible at trial, the admissibility of the format is distinct from the admissibility of the underlying evidence. Defendant does not explain how, and the court cannot

see why, the substance of the testimony would be inadmissible.  *O'Connor*, 640 F. App'x at 750.

In fact, the court sees little tension between Mike Burns's deposition testimony and the declaration

attached to the Motion for Summary Judgment, at least as relevant here.  The court is persuaded

that it is permissible to consider the deposition testimony, although the court notes it would come

to the same conclusion without considering that testimony.

### B.    Genuine Issue of Material Fact

Reviewing the evidence, the court finds that a reasonable jury could find that Defendant's

actions were willful.  RITECorp received notice that its exempt classification may have been

improper under the FLSA; there are several emails that state as much.  In particular, a reasonable

jury could find that the 2009 email from Jessica Hergenreter [#55-8 at 12], the 2012 email from

Meribeth Lunn [#94-6 at 2], and the 2014 email from Loraine Stokes [#94-6 at 4] established that

the defendant willfully misclassified Plaintiffs as exempt.  There is countervailing evidence of

good faith as well, but the narrow question at the summary judgment stage is whether there is

enough evidence that a reasonable jury could find for the non-moving party.

The evidence of good faith is not so overwhelming a jury could not find to the contrary.

*Bayles* illustrates this point.  Ambulance crews sued their employer for failure to pay them for

meal time, sleep time, and hours worked in excess of forty per week.  *Bayles*, 937 F. Supp. at 1480.

Employer defended on the basis that its employees fell under 29 U.S.C. § 213(b), which exempts

certain job classes from overtime pay requirements.  *Id.* at 1482.  Plaintiffs disputed application of

the exemption applied on the basis that employer's claimed qualification to the § 213(b) exemption

was based on an insufficient, de minimis factual predicate.  *Id.* at 1483.  The court eventually

resolved most claims against the employer, but only after a lengthy and detailed analysis of the

law applicable to ambulance crews in general and Plaintiffs specifically. *Id.* at 1483–90. In light of the lack of clear governing law, the court found that some claims were barred under the statute of limitations because Plaintiffs could not prove that employer's conduct was willful in light of the fact that employer had sought advice from counsel and the Department of Labor and, when faced with "a split of authority among the circuits and no Tenth circuit authority regarding the application of the § 213(b) exemption to ambulance services," simply acted in its best interest and chose the most advantageous route. *Id.* at 1489. The court therefore granted summary judgment on some of the time-barred claims. *Id.*

Contrast *Bayles* with *Ali v. Jerusalem Rest., Inc.*, No. 14-cv-933-MEH, 2015 WL 1345326 (D. Colo. 2015) and *Clark v. Storey Wrecker Svc., Inc.*, No. 3-cv-638-JHP-SAJ, 2006 WL 2130667 (N.D. Okla. 2006). In *Ali*, a waitress sued her employer for failure to pay her overtime, and the court denied summary judgment because the employees had asked about overtime on more than one occasion. *Ali*, 2015 WL 1345326 at *3. There was therefore a question of fact for the jury as to the employer's willfulness in denying overtime based on employer's actual knowledge of and apparent summary disregard of overtime requirements. *Id.* In *Clark*, the employer made a more diligent inquiry, consulting with an attorney and the DOL about the employee compensation structure, but the court denied summary judgment for the defendants because the defendants never requested a written opinion, never inquired specifically as to the exception they claimed applied, and never asked the Secretary of Transportation despite its belief that it was regulated by that

entity.  *Clark*, 2006 WL 2130667, at *3–4.  There was therefore a question of fact for a jury as to the employer's willfulness in its FLSA violations.

In *Bayles* partial summary judgment for the defendant on the basis that a reasonable jury could not find that defendant's conduct was willful was appropriate because the state of the law was unclear—there was a circuit split and an absence of Tenth Circuit authority—and defendant undertook extensive efforts to ensure compliance with the FLSA, seeking advice from counsel and the Department of Labor.  *Bayles*, 937 F. Supp. At 1489.  Defendant's diligence is not nearly so well established in the present case.  Defendant argues that it operated in good faith because it undertook extensive consultations with ESG and "others in the industry" as to its employees' proper classification.  The evidence does show that RITECorp spent years discussing the matter with ESG, but this evidence is not dispositive as it may fairly be construed either way.

On one hand, a reasonable jury could interpret Defendant's conduct as diligence and good faith.  On the other hand, a reasonable jury could interpret those same facts as evidence that RITECorp, in spending several years conferring with its "co-employer" ESG, was not particularly interested in a definitive resolution and avoided seeking a more authoritative resolution from counsel (which it eventually got and immediately followed) or the Department of Labor.  Because there is evidence to support either interpretation, that decision must be left to a jury.  It is axiomatic that "at the summary judgment stage the judge's function is not h[er]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202

(1986).  Defendant has not met its burden, and summary judgment on the issue of willfulness is inappropriate.

## II.    Plaintiffs' CWCA Claim is Permissibly Based on an Entitlement to Unpaid Overtime

Defendant argues that CWCA does not contain a substantive entitlement to overtime payment, and thus Plaintiffs' second claim for relief, based on CWCA, [#1 at 7] must be dismissed. Plaintiffs contend that while the CWCA does not create a substantive entitlement to overtime pay, Colorado does under 7 CCR § 1103-1:2, i.e., the Colorado Department of Labor and Employment, Colorado Minimum Wage Order Number 32 ("Minimum Wage Order No. 32").  [#94 at 14]; 7 Colo. Code Regs. § 1103:1:2.  Defendant is correct that CWCA does not create a right to compensation where none previously existed, but it is incorrect that this entitles it to summary judgment.

The court begins by finding that it is not considering any claim by Plaintiffs to overtime entitlement under the applicable Minimum Wage Order No. 32.  Plaintiffs did not assert that claim in their Complaint.  [#1].  Plaintiffs suggests that Defendant is not entitled to summary judgment because of the Minimum Wage Order by citing it in their Response [#94 at 14], but this court will not consider a new claim for relief asserted in a Response.[7]  Thus, the court proceeds on the understanding that the CWCA claim is predicated solely on the alleged FLSA violation.  To the extent that Plaintiffs seek recovery under the CWCA for meal breaks and rest periods, those

---

[7] Plaintiffs' citations to Minimum Wage Order 32 do not relate to the original Complaint because the Complaint did not explicitly refer to the CWCA claim as predicated on a violation of the Minimum Wage Order.  Indeed, Plaintiffs' CWCA claim incorporated the FLSA claim [#1 at 6, 7] (incorporating ¶¶1–39 into the CWCA claim; FLSA claim asserted in ¶¶ 36–39).

theories are not included in this action as postured, and this court is skeptical that Plaintiffs could satisfy the necessary standards to amend their operative Complaint at this late date.[8]

CWCA is an enforcement mechanism for employees to enforce their entitlement to earned or agreed wages, but nevertheless supports Plaintiffs' claim for unpaid overtime despite the fact that CWCA does not itself contain a substantive entitlement to overtime payments. Plaintiffs had done that work that, under FSLA and related laws, entitled them to compensation, and CWCA supported their claim because CWCA operates as an enforcement mechanism for employees to collect wages to which they are entitled. While CWCA does not create a substantive new entitlement to overtime, it can enforce preexisting entitlements under the FLSA. I conclude that the CWCA supports a claim for overtime pay owed under the FLSA. *Irigoyen-Morales v. Concreations of Colorado, Inc.*, No. 15-CV-02272-LTB-KLM, 2016 WL 9735757, at *2 (D. Colo. 2016).

Further, Colo. Rev. Stat. § 8-4-121 states that "[a]ny agreement, written or oral, by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void." If RITECorp was correct that only the employee agreement governed what wages an employee was entitled to under CWCA—at separation or otherwise—then section 121 would be superfluous, an obviously incorrect conclusion. Plaintiffs may collect any unpaid wages they have earned under CWCA, whether under an applicable employee agreement or statute. In short, this court agrees with the *Irigoyen-Morales* court, which held that "CWCA supports a claim for overtime pay owed under the FLSA." *Irigoyen-Morales*, 2016 WL 9735757, at *2. If Plaintiffs

---

[8] Because this court finds that Plaintiffs' CWCA claim does not include theories related to meal breaks and rest periods, this court declines to address Defendant's arguments that it is entitled to summary judgment on such theories. [#87 at 18-19].

were improperly classified as exempt when they were entitled to overtime pay, then they "earned" overtime pay for hours worked under the FLSA and may bring a cause of action under CWCA.

Insofar as Defendant argues that Plaintiffs cannot recover wages time-barred by the application of the statute of limitations set forth in *Hernandez*, that is an issue for the damages calculation when and if applicable. Summary judgment is not appropriate simply because some violations may have taken place outside the statute of limitations. "It is well-settled that Rule 56 permits a party to seek summary judgment only as to an entire claim; a party may not seek summary judgment on a portion of a claim." *Powers v. Emcom Assoc., Inc.*, No. 14-cv-03006-KMT, 2017 WL 4102752, at *1 (D. Colo. 2017) (collecting cases).

However, there is no genuine dispute that Plaintiff did not make a written demand for payment under section 109(3)(a). *Compare* [#87 at 5 ¶ 21] *with* [#94 at 5 ¶ 21]. As discussed in detail before, Plaintiffs' summary denial, without any evidentiary support, is insufficient for the purposes of summary judgment. *United States v. Lattauzio*, 748 F.2d 559, 561 (10th Cir. 1984) (observing that a party opposing a properly supported motion for summary judgment may not rest on the mere allegations or denials). Summary judgment is thus appropriate as to Plaintiffs' claims for relief for CWCA penalties.

## CONCLUSION

Accordingly, **IT IS ORDERED**:

(1)     Defendant RITECorp Environmental Property Solutions'[s] [sic] Motion for Summary Judgment [#87] is **GRANTED** as to all claims asserted by Opt-In Plaintiff Shan Curry;

(2)     The Motion for Summary Judgment [#87] is **GRANTED** as to all claims for

statutory penalties under CWCA, and;

(3)     The Motion for Summary Judgment [#87] is **DENIED** as to all other parties and

claims.

DATED: October 17, 2018                    BY THE COURT:

                                           _____
                                           United States Magistrate Judge